**LAKE MEREDITH DEVELOPMENT COMPANY, Appellant,**

v.

**CITY OF FRITCH, Appellee.**

**No. 8868.**

Court of Civil Appeals of Texas, Amarillo.

March 20, 1978.

Miller, Miller & Russell, Oth Miller, Amarillo, for appellant.

Gassaway, Gurley & Sheets, Jody G. Sheets, Borger, for appellee.

DODSON, Justice.

This is an action in trespass to remove pipelines from real property. Lake Meredith Development Company, a corporation, the appellant-plaintiff, brought suit against the City of Fritch, appellee-defendant, seeking to remove two pipelines from property owned by the development corporation or alternatively for damages. The City answered by general denial, affirmative defenses and asserted counterclaims for easement by estoppel and by implication. The nonjury trial resulted in a take-nothing judgment against the development corporation and decreed an easement across the property with rights of ingress and egress in favor of the City. The development corporation appeals this judgment. We affirm.

The development corporation is the owner of a 59.132 acre tract of land in Hutchinson County, Texas, which adjoins the City of Fritch. At the request and expense of prior owners of the property, the City installed two underground pipelines, one for water and the other for sewage, which traversed the 59.132 acre tract. These pipelines provide utility services to Harbor Bay Unit I, an addition to the City of Fritch, and other properties. When the pipelines were installed by the City, Harbor Bay Unit I and the 59.132 acre tract were under common ownership. No written conveyance of the purported water and sewer easement in question was ever filed or recorded in the deed records of Hutchinson County, Texas.

The City claims it obtained an easement by estoppel and by implication across the 59.132 acre tract from prior owners of the property. The development corporation says it is an innocent purchaser of the property for value without actual or constructive notice of the proposed pipeline easement.

The parties agree that as a general rule one who attempts to show an easement by estoppel must show that (1) a representation was communicated to the promisee; (2) the communication was believed; and (3) there has been reliance upon such communication. *Dyre v. Eagle Rock Ranch, Inc.*, 364 S.W.2d 196 (Tex.1962) and *Doss v. Blackstock*, 466 S.W.2d 59 (Tex.Civ.App.—Austin 1971, writ ref'd n. r. e.). Also, the development corporation agrees and concedes that elements one and two are supported by the evidence in this case. However, the corporation contends that the third element was not established. The corporation says "the evidence does not show that [the City] has expended any money in reliance on the communication" because the

prior owners paid for the installation of the pipeline.

█ In essence, the development corporation claims that reliance by the City can be shown only by "an expenditure of some sort." In support of this contention, they rely on *Exxon Corporation v. Schutzmaier*, 537 S.W.2d 282, 285–86 (Tex.Civ.App.— Beaumont 1976, no writ). However, we do not read *Exxon* to require this narrow construction. There the court noted that the Supreme Court stated in *Dyre* that "[t]he exact nature and extent of the doctrine of estoppel in pais have not been clearly defined" and that "[i]n certain situations, it has thus been suggested that the cases should more properly be based upon a construction of the surrounding circumstances."

The *Exxon* court further said:

The courts of this State have said that " 'the owner of land may create an easement by parol agreement or representation which has been so acted on by others to create an estoppel in pais'." 4 F. Lange, Texas Practice 148, 149, § 377 (1961); *Harris v. Rabe*, 375 S.W.2d 919, 922 (Tex.Civ.App.—Waco 1964, no writ); *Jackson v. Back*, 378 S.W.2d 723, 726 (Tex.Civ.App.—Amarillo 1964, no writ). The *reliance* and *resulting possible detriment* to the plaintiffs if the easement is revoked is well established . . . . (Emphasis added)

The additional factor of detriment or possible detriment was present. Thus, the decision was not grounded totally on an expenditure of some funds on the servient estate or property of the promisee. We conclude that reliance includes detriment which may be determined from the surrounding circumstances, such as the effect on the user if the easement is revoked or removed.

The undisputed evidence shows that Mr. Tommy Martin and others owned the 59.132 acre tract of land and other property referred to as Harbor Bay Unit I.[1] Mr. Mar-tin approached the City of Fritch concerning the development of these properties. The City hired a consulting firm to work with the City and Mr. Martin.

The consulting engineer testified that the City of Fritch employed him to prepare plans and specifications for water and sewer services to the Harbor Bay area, to make recommendations on line locations, to assist in obtaining bids for construction of these lines and to supervise their installation. He met several times with Mr. Martin and the city council to assist them in the matter. Mr. Martin provided an "Overall plat of Harbor Bay." Mr. Martin and the City agreed to the engineer's recommendations on the location of the water and sewer lines over the 59.132 acre tract to be used to serve the area. The engineer staked the locations of the lines. Mr. Martin had "his own surveyor mark the easement across the property." On July 7, 1965, the City opened and accepted a bid for the water and sewer installation in the amount of $79,000.

The engineer described the sewer line as a 10 inch vitrified clay line and the waterline as a 10 inch asbestos cement line. The sewer line is a gravity line and varies in the underground depth from four and a half to nine feet. The waterline is generally about 30 inches underground. He further testified that the water and sewer lines were completed and turned over to the City in September or October 1965, that there has been no alteration in the lines and no cessation of service with the lines since installation. He also testified that it would be very costly to move the waterline and extremely costly to remove the sewer line because a lift station would be required to replace the gravity flow line.

The uncontroverted testimony of the Fritch city manager was that these water and sewer lines serve Harbor Bay Unit I, which is inside the City, Maverick Village, which is not in the City, and Double Diamond Estates, which is served with water only and lies outside the City. However, he

---

1. Mr. Tommy Martin and others conveyed these properties to Great Plains Development Corporation before the pipeline project was completed. An unchallenged finding of fact by the trial court established Mr. Martin as president of Great Plains Development Corporation.

further said that the City of Fritch has no other feasible manner for providing water and sewer services to Harbor Bay Unit I other than through these lines across the 59.132 acre tract.

All of the evidence set forth above is uncontroverted in the record. We determine that the acts, conduct and representations of the prior owners created an easement which has been so acted on by the City of Fritch and its residents as to establish an estoppel in pais. The uncontroverted evidence shows the reliance and resulting possible detriment to the City of Fritch and its residents if the easement is revoked or removed.

We also conclude that the City of Fritch is not precluded from obtaining the easement by estoppel [in pais] across the 59.132 acre tract by the undisputed fact that the prior owner of the property paid $79,000 to the City on the installation of the water and sewer lines. The development corporation does not direct us to any other evidence or absence of any evidence to support its legal and factual insufficiency points on this issue. However, our review and evaluation of all the evidence in the record reveals ample evidence to support the questioned finding and conclusion of easement in pais.

The trial court held on both undisputed and in part conflicting evidence that the development corporation was not an innocent purchaser of the 59.132 acre tract for value without actual notice of the pipeline easement. The development corporation attacks these findings and conclusions by legal and factual sufficiency points.

In *Fender v. Schaded*, 420 S.W.2d 468, 473 (Tex.Civ.App.—Tyler 1967, writ ref'd n. r. e.) the court said:

> The law imputes to a purchaser such knowledge as he would have acquired by the exercise of ordinary diligence. * * The Grantee is bound where a reasonably careful inspection of the premises would disclose the existence of the easement, or where the Grantee has knowledge of the facts sufficient to put a prudent buyer on inquiry. It is not necessary that the easement be in constant and uninterrupted use. * * *

The undisputed testimony of Clarence Spangler, vice-president of Lake Meredith Development Company, one of the principals in negotiating the purchase of the property, was as follows:

Q. Are you aware that the City of Fritch has two lines, a sewer and waterline, buried under that property that traverses the property?

A. Yes, sir.

Q. When did you first learn about that?

A. I did not know of those water and sewer lines until the surveyor who was preparing the perimeter for the closing of this purchase brought it to our attention, which was sometime in August of '72.

Q. August, '72?

A. Yeah.

Q. Was that before or after you had signed the sales contract?

A. It was after we had signed the sales contract.

Q. And before the deed had been signed?

A. Yes, sir.

Q. Do you know approximately what date the survey was completed that revealed that there was—

A. August 10, 1972.

Q. The deed, I believe, is dated August 19?

A. Yes, sir. It's dated the 16th of August.

Q. After learning about the easement, did you have an occasion to contact a representative from the City of Fritch?

A. No, sir, we did not at that time.

He also said that the development corporation and its predecessor companies have been involved in the land development business since 1963.

The consulting engineer for the City of Fritch testified that the two pipelines and a twenty foot easement were shown on the official water and sewer maps of the City

of Fritch, that he prepared the maps for the City showing these matters in the fall of 1965 after the installation was completed. The Fritch city manager testified the official water and sewer maps of the City were kept in the city offices in Fritch and that such were available for inspection by the public.

On July 19, 1972, Roland Simpson and others who then owned the 59.132 acre tract entered into a contract of sale of the property to Lake Meredith Development Company. On August 16, 1972, Roland Simpson and others conveyed the property by Warranty Deed to Lake Meredith Development Company. The contract of sale by Simpson and others with Lake Meredith Development Company provided for an owner's title policy with no exception other than, in part, "visible or apparent easements not of record." The Warranty Deed from Simpson and others conveying the property to Lake Meredith Development Company was subject to, in part, "any visible or apparent easements (other than advertising sign easements) not of record over and across said land."

The development corporation says that the pipelines were not visible and apparent. Again, Mr. Spangler testified that he looked at the property before the purchase, that he did not "see any evidence whatever that there would be water and sewer lines traversing the property," that there was "grass and vegetation" on the property and that the grass was probably six inches to two feet tall.

Both the City's consulting engineer and city manager testified that the sewer pipeline had three manholes above the ground. The city manager said the ground was depressed along the pipelines and that this condition was visible and could even be seen from the road adjacent to the property.

The development corporation had and assumed the burden of proving it was an innocent purchaser for value without actual notice of the easement. The trial court specifically found against the corporation on this claim including its contention of no actual notice of the easement prior to purchasing the property.

■ Our review and evaluation of the evidence reveals that we must conclude the corporation failed to establish, as a matter of law, that it was an innocent purchaser of the 59.132 acre tract for value without actual notice of the easement. We have considered all the evidence in the record, both favorable and unfavorable to this issue. When the evidence is so considered, we must conclude the trial court's failure to find that the corporation was an innocent purchaser of the property for value without notice of the easement is not so against the great weight and preponderance of the evidence as to be manifestly wrong. In fact, there is ample evidence of probative force in this case to support the trial court's findings and conclusions on this issue.

In support of its position on no actual notice, the development corporation relies on *Shaver v. National Title & Abstract Co.*, 361 S.W.2d 867 (Tex.1962). We do not consider *Shaver* controlling in the case before us because the facts there are quite dissimilar from the facts here. In *Shaver* there were no surface indications that the pipeline was buried in the soil. However, here we have the additional facts of actual knowledge by the corporation of the presence of the pipeline on the property before purchase, three visible manholes above the surface of the soil, and the visible settling of the soil on the easement to a level below the surface of the remainder of the tract.

In summary, we conclude that Lake Meredith Development Company's points of error one through eight are overruled. Our ruling on these points disposes of this appeal; therefore, we do not reach the remaining points. Accordingly, the judgment of the trial court is affirmed.