**Judkins Tull WALTON, Appellant,**

v.

**CANON, SHORT & GASTON, a Professional Corporation, Appellee.**

No. 08–99–00173–CV.

Court of Appeals of Texas, El Paso.

June 15, 2000.

Rehearing Overruled Aug. 2, 2000.

---

Judkins T. Walton, Midland, for Appellant.

W. Clayton Gaston, Richard Claude Houston, Cannon, Short & Gaston, Midland, for Appellee.

Before Panel No. 1 LARSEN, McCLURE, and CHEW, JJ.

## *O P I N I O N*

SUSAN LARSEN, Justice.

Judkins Tull Walton, *pro se*, appeals from a judgment on a sworn account. After a bench trial, the trial court found Walton indebted to his former lawyers, Canon, Short & Gaston, for $22,276.90, plus pre-judgment interest and attorney's fees. Walton raises eleven points of error: (1) the trial court erred in allowing Walton's counsel to withdraw contrary to Texas Rule of Civil Procedure 10; (2) Walton had insufficient time to retain substitute counsel and prepare for trial after his counsel withdrew; (3) the trial court erred in denying Walton's request for a jury trial; (4) the trial court erred in denying Walton's motion to continue the trial; (5) the trial court violated Midland Local Rule 2.4 by failing to refer the cause to alternative dispute resolution; (6) the law firm's trial counsel was disqualified; (7) the trial court considered evidence not properly admitted; (8) the award of attorney's fees was not supported by the evidence; (9) the trial court provided insufficient time during trial for Walton to present his case; (10) the evidence is insufficient to support the trial court's findings on the amount of indebtedness; and (11) cumulative error requires reversal. We affirm.

## *FACTS*

The law firm of Canon, Short & Gaston (CSG), filed suit on a sworn account against Judkins Tull Walton (Walton), to recover for non-payment of legal services it provided Walton in *Jud Walton v. City of Midland*, a suit in which Walton alleged that the City and various corporate defendants had contaminated the ground water on Walton's ranch. Through counsel, Walton filed a sworn denial. In September 1998, the trial court scheduled trial for November 9, 1998. On October 7, Walton, through counsel Steve Hershberger, filed an amended answer and counterclaim alleging legal malpractice. Several days later, Hershberger filed a motion to withdraw because he was in ill health, which the trial court granted on October 19, 1998. On November 2, 1998, CSG filed a supplemental petition and answer, with a copy sent to Walton by certified mail.

At a hearing on November 9, 1998, the trial court granted Walton's *pro se* oral motion for continuance. At the hearing, Walton also made an oral request for a jury trial, which the trial court denied as untimely. The trial court advised the parties that he was opening the case. The court instructed the parties to obtain a trial setting from his court coordinator, and to "try to give her the best idea you can of how much time we're going to need...." The parties apparently agreed to a half-day trial. By order signed November 16, 1998, the case was set for trial on December 31, 1998.

CSG noticed a witness deposition, which was taken on December 10 and at which attorney Edmond "Dude" Martin appeared on Walton's behalf. Prior to trial, Martin filed a supplemental original answer and answer to CSG's supplemental petition, and a motion for continuance. The trial court refused any further continuance.

Before trial began, the trial court advised the parties that they could forego trial if they would submit to arbitration or mediation. Because the parties were unable to agree on who would serve as arbitrator, however, the trial court proceeded to trial. The trial court further advised the parties that each must present their case in one-and-a-half hours, to which there was no objection. Testifying for CSG, Clayton Gaston described the legal services that were rendered on Walton's behalf, Walton's refusal to pay for such services, and the cost of prosecuting this case. Walton testified on his own behalf and asserted that the fees were unreasonable. The trial court entered judgment for CSG.

### Withdrawal of Counsel

■ In his first point of error, Walton asserts that the trial court erred in permitting attorney Hershberger to withdraw. Walton argues that Hershberger's motion to withdraw failed to comply with the requirements of Texas Rule of Civil Procedure 10, because: (1) it did not state that a copy of the motion was delivered to Walton; (2) it did not state that Walton was notified in writing of his right to object to the motion; (3) it falsely stated that Walton had consented to the withdrawal; and (4) it did not state Walton's last known address and all pending settings and deadlines. He asserts that granting the motion harmed him.

Rule 10 of the Texas Rules of Civil Procedure provides, in pertinent part:

An attorney may withdraw from representing a party only upon written motion for good cause shown.... If another attorney is not to be substituted as attorney for the party, the motion shall state: that a copy of the motion has been delivered to the party; that the party has been notified in writing of his right to object to the motion; whether the party consents to the motion; the party's last known address and all pending settings and deadlines. If the motion is granted, the withdrawing attorney shall immediately notify the party in writing of any additional settings or deadlines of which the attorney has knowledge at the time of the withdrawal and has not already notified the party.[1]

In the present case, counsel's motion to withdraw states, in relevant part: "Mr. Walton consents to this withdrawal. He further requests a reasonable amount of time to retain substitute counsel." The motion does not state that Walton was delivered a copy of the motion, nor that Walton was advised in writing of his right to object to the withdrawal. It does not state Walton's last known address or the pending settings and deadlines. As such, the motion did not comply with the requirements of Rule 10.

■ A trial court abuses its discretion when it grants a motion to withdraw that does not comply with the mandatory requirements of Rule 10.[2] Nevertheless, such error may be harmless if the court allows the party time to secure new counsel and time for the new counsel to investigate the case and prepare for trial.[3] Here, the trial court afforded Walton additional time to secure new counsel and prepare for trial. The original setting of November 9 was ultimately delayed until December 29, allowing Walton an additional fifty days before trial. Any deficiencies in the

---

1. Tex.R. Civ. P. 10.

2. *Williams v. Bank One Texas, N.A.,* 15 S.W.3d 110, 114 (Tex.App.—Waco 1999, no

pet. h.); *Moss v. Malone,* 880 S.W.2d 45, 51 (Tex.App.—Tyler 1994, writ denied).

3. *Williams,* 15 S.W.3d at 114.

motion to withdraw were rendered harmless by the trial court's allowance of this additional time.[4]

■ Walton also contends that counsel failed to comply with the notification requirements of Midland County Local Rule 2.3. Since the record reflects that Walton consented to the withdrawal, any deficiency in notifying Walton that the trial court would be requested to sign the order to withdraw within ten days was rendered harmless. Accordingly, appellant's first point of error is overruled.

### Time to Prepare for Trial

■ In his second point of error, Walton contends that he was denied sufficient time to secure counsel and prepare for trial. Specifically, he asserts that he only had six days to prepare because he did not learn of the November 9 setting until November 3, when he received a copy of CSG's petition and answer to his counterclaim. Thus, Walton argues, it was harmful error for the trial court to allow counsel to withdraw without postponing the trial.

The record reflects that Walton consented to the withdrawal, despite his contentions to the contrary. Thus, he had notice as of the date counsel filed his motion to withdraw in early October, that he would need new counsel for all upcoming settings. In fact, the November 9 trial date was set on September 3, more than forty-five days before trial, and more than a month before counsel filed his motion to withdraw.[5] Further, since the trial court continued the trial until December 29, Walton received additional time in which to retain new counsel and prepare for trial. Thus, Walton failed to show how he was harmed. His second point of error is overruled.

### Request for Jury Trial

■ In his third point of error, Walton asserts that the trial court erred in denying his oral request for a jury trial made on the day of trial. On November 9, Walton made an oral request for a jury trial on his malpractice counterclaim. Walton argues that the trial court "opened" the case on that date solely to preclude him from additional time in which to timely file a motion for jury trial, even though the court granted his motion for continuance.

■ To be entitled to a jury trial, a party must follow the procedure set out in Texas Rule of Civil Procedure 216; not less than thirty days before trial, the party must make a written request for a jury and pay a jury fee.[6] Where no fee is paid, the trial court has discretion to grant or deny a late request, and the burden of showing abuse of discretion is on the party making the late request.[7]

Here, Walton neither filed a written request for a jury nor paid a fee, and thus he was not entitled to a jury trial. The trial court did not abuse its discretion in denying the request for a jury. Appellant's third point of error is overruled.

### Denial of Motion to Continue

■ In his fourth point of error, Walton argues that the trial court erred in denying his motion to continue the trial on December 29. His new counsel, Martin, filed a written motion which was denied. On the day of trial, counsel re-urged his motion, on the grounds that he had insufficient time in which to prepare for trial. The motion was again denied.

---

4. *See id.; Holt v. D'Hanis State Bank,* 993 S.W.2d 237, 240 (Tex.App.—San Antonio 1999, no pet.).

5. *See* Tex.R. Civ. P. 245 (court may set contested cases with reasonable notice of not less than forty-five days to the parties of a first setting for trial).

6. Tex.R. Civ. P. 216; *Higginbotham v. Collateral Protection, Inc.,* 859 S.W.2d 487, 489 (Tex. App.—Houston [1st Dist.] 1993, writ denied).

7. *Id.* at 490.

 The granting or denial of a motion for continuance is within the discretion of the trial court and will not be reversed unless the record shows a clear abuse of discretion.[8] The test for abuse is whether the court acted without reference to any guiding rules and principles.[9]

Here, the trial court had granted one continuance of over a month so Walton could secure new counsel and additional time to prepare for trial. Walton retained new counsel as early as December 10, as Martin represented him at a deposition on that date. It was within the trial court's discretion to determine that a further continuance was unnecessary, and we find the trial court did not abuse its discretion. Appellant's fourth point of error is overruled.

### Alternative Dispute Resolution

 Next, appellant contends that the trial court erred in failing to refer the parties to alternative dispute resolution (ADR), in violation of Midland County Local Rule 2.4. Rule 2.4 requires a trial court to refer a case to ADR unless the trial court determines that ADR is inappropriate for the case. Since there was no explicit finding of fact that the trial court found ADR inappropriate for this case, Walton argues that the trial court should have made the referral, and failure to do so was harmful error.

 Local rules are effective only to the extent that they do not conflict or limit the rules of procedure.[10] Rule 3a of the Texas Rules of Civil Procedure states that each court may make and amend local rules governing practice before such courts, provided that any proposed rule or amendment shall not be inconsistent with these rules.[11] Rule 10 of the Texas Rules of Judicial Administration states that the local rules adopted by the courts of each county shall conform to all provisions of state and administrative region rules.[12]

 Chapter 154 of the Texas Civil Practice and Remedies Code authorizes a trial court to refer a dispute to an ADR procedure.[13] A trial court has discretion in determining whether ADR is appropriate in a particular case.[14] A court may consider, among other factors, the nature of the dispute, the complexity of the issues, the number of parties, the extent of past settlement discussions, the posture of the parties, whether there had been sufficient discovery to permit an accurate case evaluation, the status of the case on the docket, and whether a referral would be appropriate at that particular time.[15]

Contrary to Walton's assertions, the record here reveals that the trial court did suggest ADR to the parties on the day of trial. The parties were unable to reach an agreement on who would serve as arbitrator, so the trial proceeded. We may reasonably infer that the trial court found that referral for ADR would not have benefitted the parties and would only have served as a delay.[16] In light of the fact that CSG had previously suggested arbitration to Walton in several letters, to no avail, we do not find a clear abuse of discretion in the trial court's failure to make the referral. Point of Error Five is therefore overruled.

**8.** *Id.*

**9.** *Id.*

**10.** *United Business Mach., Inc. v. Southwestern Bell Media, Inc.*, 817 S.W.2d 120, 124 (Tex.App.—Houston [1st Dist.] 1991, no writ) (O'Connor, J. dissenting).

**11.** Tex.R. Civ. P. 3a(1).

**12.** Tex.R. Jud. Admin. 10.

**13.** Tex. Civ. Prac. & Rem.Code Ann. § 154.021 (Vernon 1997).

**14.** *Keene Corp. v. Gardner*, 837 S.W.2d 224, 232 (Tex.App.—Dallas 1992, writ denied).

**15.** *Downey v. Gregory*, 757 S.W.2d 524, 525 (Tex.App.—Houston [1st Dist.] 1988, orig. proceeding).

**16.** *See id.* at 525–26.

## Disqualification of Attorney

■ In Point of Error Six, Walton contends that Craig Jones, attorney for CSG at trial, should have been disqualified from the case. Specifically, Walton asserts that due to counsel's prior employment by defendants in Walton's environmental case, he gained confidential information that could be used to his benefit or to Walton's prejudice.

■ Disqualification is a severe remedy, and we will reverse the trial court only for abuse of discretion.[17] In order to prove disqualification, the movant must show a substantial relationship between the subject matter of the prior representation and the pending litigation.[18] The movant must prove the existence of a prior attorney-client relationship in which the factual matters involved were so related to the facts in the pending litigation that it creates a genuine threat that confidences revealed to his former counsel will be divulged to his present adversary.[19] We note initially that Walton does not contend Jones ever represented him or his interests; rather Jones represented opposing parties in the water contamination litigation. As a threshold matter, then, Walton cannot show a conflict requiring disqualification.[20]

■ Moreover, the only support for this point is found in the appendix to Walton's brief, which contains the first two pages of the reporter's record in cause number 41,309, *Jud Walton v. City of Midland*, a hearing on a motion for sanctions. At that hearing, Jones appeared as counsel for Phillips Petroleum Company and ARCO Oil and Gas Company, defendants in the case. As attachments to appellant's brief are not considered part of the record, there is nothing before us to support Walton's contentions. Walton fails to show that Jones obtained confidential information from his representation of ARCO or Phillips that would pose a potential threat to his current representation. Walton's sixth point of error is overruled.

## Consideration of Evidence Not Admitted into the Record

■ In his seventh point of error, Walton avers that the court reporter improperly filed all twenty-six exhibits from the case, although exhibits 5 through 12, 24 and 26 were never admitted into evidence. Further, he asserts that there is no indication of which exhibits were admitted or not and thus the trial court possibly considered exhibits that were not in evidence.

Rule 75a of the Texas Rules of Civil Procedure provides that a court reporter shall file all exhibits admitted into evidence, so that a trial court may consider only evidence admitted at trial.[21] The record reflects that the court reporter complied with this rule by filing those exhibits that were admitted into evidence, exhibits 1 through 4, and 13 through 23. The record on appeal contains only those exhibits. Further, the transcript of the hearing indicates that those same exhibits were admitted into evidence.

■ A trial judge is presumed to consider only the testimony and exhibits properly in evidence.[22] Since there is nothing in the record here to indicate that the trial court considered any improper evidence,

---

17. *Spears v. Fourth Court of Appeals*, 797 S.W.2d 654, 656 (Tex.1990); *Cruz v. Hinojosa*, 12 S.W.3d 545, 551 (Tex.App.—San Antonio 1999, pet. denied).

18. *NCNB Texas Nat'l Bank v. Coker*, 765 S.W.2d 398, 399–400 (Tex.1989); *Cruz*, 12 S.W.3d at 551; *Ghidoni v. Stone Oak, Inc.*, 966 S.W.2d 573, 578–79 (Tex.App.—San Antonio 1998, no pet.).

19. *NCNB*, 765 S.W.2d at 400.

20. *Id.*

21. *See* Tex.R. Civ. P. 75a.

22. *WTFO, Inc. v. Braithwaite*, 899 S.W.2d 709, 721 (Tex.App.—Dallas 1995, no writ); *City of Corpus Christi v. Krause*, 584 S.W.2d 325, 330 (Tex.Civ.App.—Corpus Christi 1979, no writ).

we presume that the trial court acted properly. Point of Error Seven is overruled.

### Sufficiency of Evidence on Attorney's Fees

In Point of Error Eight, Walton argues that the evidence was legally and factually insufficient to support the award for attorney's fees. He argues that the fees were not reasonably related to the difficulty of the case or to the amount in controversy. The amount of an award of attorney's fees rests in the sound discretion of the trial court, and its judgment will not be reversed on appeal without a clear showing of abuse of discretion.[23] We review an award of attorney's fees under a sufficiency of the evidence standard.[24] As a general rule, the party seeking to recover attorney's fees carries the burden of proof.[25] The trial court may award those fees that are "reasonable and necessary" for the prosecution of the suit.[26] In order to show the reasonableness and necessity of attorney's fees, the plaintiff is required to show that the fees were incurred while suing the defendant on a claim that allows recovery of such fees.[27] A recognized exception to the duty to segregate arises when the attorney fees rendered are in connection with claims arising out of the same transaction and are so interrelated that their prosecution or defense entails proof or denial of essentially the same facts such that they are inseparable.[28] A determination of reasonable attorney's fees is a question for the trier of fact.[29]

Section 38.001 of the Texas Civil Practice and Remedies Code provides for the recovery of reasonable attorney's fees, in addition to the amount of a valid claim and costs, if the claim is for rendered services or for a sworn account.[30] The essential elements of proof in a suit on a sworn account are: (1) sale and delivery of merchandise or performance of services; (2) that the amount of the account is "just" which means that the prices charged are pursuant to an express contract, or in the absence of a contract, that the charges are usual, customary, or reasonable; and (3) the purchase price remains unpaid by the defendant.[31]

At trial, Gaston testified that Walton approached him in October 1997 to represent him in his case against the City of Midland, seeking recovery for contamination of the water wells on his ranch. Walton told the firm there was a motion for summary judgment pending against him by the City, and that a response was due shortly. Walton and CSG discussed a fee arrangement at their initial meeting, and Walton negotiated a reduced hourly rate. Further, contrary to the firm's usual practice, it required no retainer from Walton, despite the size of the case, his status as a new client, and the looming summary judgment deadline. The fee agreement was reduced to writing in a letter to Walton, which was admitted into evidence without objection. CSG's invoices for all services rendered to Walton during the

---

**23.** *Rowley v. Lake Area Nat'l Bank,* 976 S.W.2d 715, 724 (Tex.App.—Houston [1st Dist.] 1998, pet. denied).

**24.** *Stewart Title Guaranty Co. v. Sterling,* 822 S.W.2d 1, 11 (Tex.1991).

**25.** *See id.* at 10.

**26.** *Id.*

**27.** *Id.*

**28.** *Hartmann v. Solbrig,* 12 S.W.3d 587, 594 (Tex.App.—San Antonio 2000, no pet. h.).

**29.** *Sterling,* 822 S.W.2d at 12.

**30.** *See* Tex. Civ. Prac. & Rem.Code Ann. § 38.001(1), (7) (Vernon 1997).

**31.** *Livingston Ford Mercury, Inc. v. Haley,* 997 S.W.2d 425, 430 (Tex.App.—Beaumont 1999, no pet.); *Wright v. Christian & Smith,* 950 S.W.2d 411, 412 (Tex.App.—Houston [1st Dist.] 1997, no pet.); *see Thorp v. Adair & Myers,* 809 S.W.2d 306, 307 (Tex.App.—Houston [14th Dist.] 1991, no writ).

course of representation were also admitted without objection.

As to the work done on the underlying case, Gaston testified extensively. The trial court granted an extension of time for CSG to respond to the motion for summary judgment. CSG researched the issues, sought out experts, and prepared a response to the motion for summary judgment. The firm also amended Walton's petition to include additional causes of action. Summary judgment was denied. Subsequently, Walton refused to pay for legal services rendered, despite numerous requests for payment. Finally, CSG withdrew as counsel for Walton. The total amount of fees and expenses incurred was $22,276.90. Gaston testified the amount was reasonable and necessary, and reflected just and true charges, and Walton had been granted all credits and offsets due. The charges were recorded through a systematic record keeping process.

Gaston also described the efforts of CSG to collect from Walton. He testified that they prepared an original petition to collect the fees. He attempted to resolve the matter over the phone with Hershberger, and subsequently learned of the counterclaim filed by Hershberger. CSG worked on an answer to the counterclaim, a motion for summary judgment, and a motion for a directed verdict. They prepared for trial each time the case was set. Gaston related that he evaluated the fees listed in plaintiff's exhibit 13 and believed them to be reasonable and necessary. He further explained that about 90 percent of the fees went to the prosecution of this claim, while the other 10 percent went to the counterclaim. The fees and expenses were recorded and accumulated through a systematic record keeping process. All offsets and credits were afforded to Walton. Ga-

ston further opined that if Walton unsuccessfully appealed this case to the Court of Appeals, a response to such appeal would cost $10,000 to $15,000. If Walton were to appeal, unsuccessfully, to the Texas Supreme Court, additional fees of $5,000 to $10,000 would be incurred to respond to that appeal.

We find the evidence is sufficient to support the trial court's findings of fact that CSG incurred reasonable attorney's fees in the amount of $9,628.50 in pursuing their collection case. The trial court also found that on appeal, reasonable attorney's fees would be incurred in the amount of $10,000 for the Court of Appeals, and $5,000 for the Texas Supreme Court, thus using the lowest numbers in the ranges provided by Gaston. Accordingly, Point of Error Eight is overruled.

### Time Limit on Trial

 In Point of Error Nine, appellant contends that the proceedings held on December 29 did not constitute a trial because the trial court did not allow sufficient time for him to present his case. More specifically, he argues that the trial court precluded him from presenting all his evidence because of the time constraints imposed.

 The trial judge is responsible for the general conduct and management of the trial.[32] The judge may properly intervene in the proceedings to maintain control and promote expedition.[33] The Texas Rules of Evidence provide that a trial court shall exercise reasonable control over the mode and order of interrogation of witnesses and the presenting evidence in order to make the interrogation effective for the ascertainment of the truth and to avoid needless consumption of time.[34]

---

**32.** *Hoggett v. Brown,* 971 S.W.2d 472, 495 (Tex.App.—Houston [14th Dist.] 1997, no pet.); *Metzger v. Sebek,* 892 S.W.2d 20, 38 (Tex.App.—Houston [1st Dist.] 1994, writ denied), *cert. denied,* 516 U.S. 868, 116 S.Ct. 186, 133 L.Ed.2d 124 (1995).

**33.** *Hoggett,* 971 S.W.2d at 495; *Metzger,* 892 S.W.2d at 38.

**34.** Tex.R. Evid. 611(a); *Stam v. Mack,* 984 S.W.2d 747, 752 (Tex.App.—Texarkana 1999, no pet.) (trial court did not err in sua sponte interrupting cross-examination of witness, where done to control improper questioning).

If the trial court acted improperly, we must examine the record as a whole to determine whether the impropriety caused harm.[35]

Here, the trial court had authority to maintain control over the courtroom proceedings, and to intervene where necessary to expedite the trial. Apparently based on the parties' own estimates of how much time each would need to present their case, the trial court allotted an hour and a half for each side. After direct and cross-examination of witness Gaston was complete, the court advised the parties of the time they had remaining. During Walton's direct-examination testimony, the court intervened and advised Walton that he was going to run out of time if he did not answer the question. The trial court also intervened during Martin's questioning of Walton and stated: "Mr. Martin, I'm going to need to get you to wrap it up."

Walton's attorney was permitted to conduct an extensive cross-examination of Gaston, and then elicited testimony from Walton. Walton complains that he was not permitted to develop his case on the counterclaim for legal malpractice and so he did not present any exhibits on that claim, but he does not explain what evidence he intended to introduce, nor is there in the record a bill of exception on this issue.[36] He has not preserved this complaint for review, and we would be hard-pressed to find error in any event, where the parties were subject only to time limits they set themselves. Finding no impropriety in the trial court's actions, we overrule Point of Error Nine.

## Sufficiency of Evidence on Sworn Account

■■■ In Point of Error Ten, Walton contends that the evidence is insufficient to support the trial court's findings of fact and conclusions of law that he is indebted to CSG for $22,276.90 for legal services, and that such amount was reasonable and just. He argues that CSG failed to prove each item on their invoices and failed to prove the reasonableness of the fees charged. He further asserts that he was precluded from eliciting testimony to establish the unreasonableness of the fees.

As set out under Point of Error Eight above, the testimony at trial supported the trial court's findings of fact and conclusions of law. We find there is sufficient evidence in the record to establish the elements of a sworn account, and that Walton was indebted to CSG on that account. The amount of $22,276.90 was reasonable and necessary. Walton was granted all offsets and credits, and the evidence established that the charges were just and true. Point of Error Ten is overruled.

### Cumulative Error

■■■ Finally, in his eleventh point of error, Walton states that even if no single error warrants reversal, the cumulative effect of all error warrants reversal. It is true that multiple errors, even if considered harmless taken separately, may result in reversal if the cumulative effect of such error is harmful.[37] Before this court may reverse a judgment and order a new trial, however, we must determine that the error committed by the trial court was reasonably calculated to cause and probably did cause the rendition of an improper judgment.[38] An appellant must show,

---

**35.** *Bott v. Bott,* 962 S.W.2d 626, 631 (Tex. App.—Houston [14th Dist.] 1997, no pet.) (instructing witness to answer question where witness had been non-responsive was not improper).

**36.** *See* TEX.R.APP. P. 33.2.

**37.** *Weidner v. Sanchez,* 14 S.W.3d 353, 377 (Tex.App.—Houston [14th Dist.] 2000, no pet. h.); *Fibreboard Corp. v. Pool,* 813 S.W.2d 658, 695 (Tex.App.—Texarkana 1991, writ denied), *cert. denied,* 509 U.S. 923, 113 S.Ct. 3037, 125 L.Ed.2d 724 (1993).

**38.** *Weidner,* 14 S.W.3d at 377–78; *Pool,* 813 S.W.2d at 695–96.

based on the record as a whole, that but for the alleged errors, the jury would have rendered a verdict favorable to it.[39]

We find that the error, if any, which occurred below does not constitute cumulative error. We overrule Walton's eleventh point of error.

### CONCLUSION

Having overruled each of appellant's points of error, we affirm the trial court's judgment.

McCLURE, J., concurring.

ANN CRAWFORD McCLURE, Justice, concurring.

While I agree with the majority that a trial judge is responsible for the general conduct and management of a trial, the supporting authority offered does not address the particular circumstances presented here. Further, practitioners have long struggled with the fact that, for the most part, neither the Texas Rules of Civil Procedure nor the Texas Rules of Appellate Procedure outlines the steps necessary for preserving error in order to complain of the trial court's discretionary acts in controlling the trial. It is only in case law that these hurdles are explained, and then usually in the context of describing what an appellant has *not* done.

Over the years, we have seen efforts by the trial courts to limit the time allotted for various stages of the trial.[1] Limitations on opening and closing argument are routine and rarely the basis for complaint on appeal while limitations on voir dire trigger greater consternation.[2] Generally speaking, to complain of insufficient time for voir dire, a litigant must indicate a desire to continue, request additional time, and make of a bill of exception revealing

any questions that were not asked because of a lack of time. *Kendall v. Whataburger, Inc.,* 759 S.W.2d 751 (Tex.App.—Houston [1st Dist.] 1988, no writ). The general principles enunciated in criminal case law also apply in the safeguarding of similar rights in civil matters. *Dickson v. Burlington Northern Railroad,* 730 S.W.2d 82 (Tex.App.—Fort Worth 1987, writ ref'd n.r.e.). In the criminal arena, the courts have developed a three-pronged test for evaluating the reasonableness of a time limitation. A defendant must establish that there was no attempt to prolong the voir dire, that defense counsel was not permitted to ask proper and relevant questions, and that counsel was not permitted to examine jurors who ultimately served on the jury because of insufficient time. *Smith v. State,* 703 S.W.2d 641 (Tex.Crim. App.1985); *Ratliff v. State,* 690 S.W.2d 597 (Tex.Crim.App.1985).

As this case demonstrates, however, many courts have undertaken yet another means of trial management—limiting the total amount of time available for trial. For example, the attorneys are advised at the outset that each will have ten hours in which to present his or her side of the case. This time allotment includes all of the direct testimony offered, all of the cross-examination of the adversary's witnesses, and all of the objections lodged. To date, no appellate court has determined whether such a restriction is constitutional and if so, what steps are necessary in order to preserve error to complain of the amount of time allotted. Is a "prior restraint" timetable a violation of the due process clause and/or the open courts provision of the Texas Constitution? One could argue that while a court certainly has the discretion, authority, and probably the responsibility to control the docket [which would include the ability to tell

---

39. *Weidner,* 14 S.W.3d at 378.

1. These efforts are certainly understandable and there is increasing pressure to adopt trial management techniques in light of legislatively imposed performance measures.

2. The current debate in the Supreme Court Rules Advisory Committee—whether the court should adopt a rule of procedure outlining permissible restrictions on voir dire—demonstrates the sanctity with which the voir dire process is viewed by seasoned litigators.

counsel to "move along" or to begin restricting repetitive and cumulative testimony], the authority does not extend to a blanket prior restraint of the amount of testimony which may be tendered, particularly in light of the fact that the court has no knowledge at the beginning of the trial that such limitations will be necessary. Furthermore, what steps must be taken to complain of an overly restrictive timetable? Must counsel comply with the restrictions imposed by the cases addressing an imposition of a time restriction in the voir dire process? If so, then more time must be requested and an offer of proof tendered concerning the evidence a party was unable to adduce because of the time limitations. In the meantime, to be on the safe side, counsel should cover all of these steps when complaining of an *unreasonable* time limitation.[3]

Because the constitutional concerns are not properly before us, because error was not preserved, and because even if it were, we could not conduct a meaningful harm analysis without a bill of exception indicating the evidence Walton was prohibited from introducing, I concur.

**3.** I emphasize *unreasonable* because I agree with the majority that we would be hard-pressed to find error where, as here, the parties were subjected only to time limitations which they advised the court were reasonable given the issues presented. And while the trial frequently takes longer than predicted, I cannot fault a trial judge for expecting the litigants to adhere to self-imposed time constraints where the record is devoid of any explanation to the trial court, or to this Court, as to why additional time was needed and what additional evidence would have been offered had more time been granted.