NO. 07-05-0106-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

FEBRUARY 22, 2007
_____

ONEOK WESTEX TRANSMISSION, L.P.,

Appellant

v.

CASTOR OIL, INC.,

Appellee
_____

FROM THE 242ND DISTRICT COURT OF HALE COUNTY;

NO. B33,697-0410; HON. ED SELF, PRESIDING
_____

*Memorandum Opinion*
_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

This appeal arises from the entry of judgment after a bench trial wherein the trial court found that Oneok Westex Transmission, L.P., did not have a valid and existing pipeline easement over the property of Castor Oil, Inc. The parties agree that the written easement given to Oneok by Castor's predecessor-in-interest was not recorded. Yet, Castor claimed to be a subsequent purchaser for value without notice. The trial court found the latter to be true. On appeal, Oneok argues that 1) it had an express easement

as a matter of law, 2) it had an easement by prescription as a matter of law, 3) it had an easement by estoppel as a matter of law, 4) specific findings of fact and conclusions of law were supported by no or insufficient evidence and the opposite was proven as a matter of law, and 5) Castor did not carry its burden to prove it was a bona fide purchaser without notice. We affirm the judgment.

Oneok obtained an easement over the property at issue from its predecessor-in-interest in 1975. However, the property interest was not recorded of record. Furthermore, the easement was used to bury a pipeline across the property. Thereafter, Castor acquired the realty in 1999. Allegedly, its officers knew nothing of the encumbrance until after the acquisition.[1] It purportedly was discovered in 2001 while a representative of Castor was hunting on the property. At that time, the individual noticed a pipeline marker or vent hidden within weeds. Investigation eventually uncovered another vent or marker on the property, which marker was also hidden in weeds.

According to statute, an unrecorded conveyance is binding on a subsequent purchaser who had notice of it. TEX. PROP. CODE ANN. §13.001(b) (Vernon 2004). But, it is not enforceable against a bona fide purchaser for value without notice. *Reserve Petroleum Co. v. Hutcheson,* 254 S.W.2d 802, 805 (Tex. Civ. App.–Amarillo 1952, writ ref'd n.r.e.). To fall within the latter category, the purchaser must have acquired the property in good faith, for value, and without notice of any third-party claim. *Madison v. Gordon,* 39 S.W.3d 604, 606 (Tex. 2001). Furthermore, when notice is purportedly

---

[1]Castor's president did state, prior to trial, that he had seen an easement marker before the purchase was completed. However, he testified otherwise at trial.

2

dependent upon possession of the interest, as here, the type of possession deemed sufficient must be open, visible, exclusive and unequivocal. *Id.*

Here, the trial court found that Castor was a subsequent purchaser for value without notice of the easement or pipeline. Oneok challenges the finding because pipeline vents or markers disclosed the location of the pipeline, they were allegedly seen by Castor representatives before the property was acquired, other markers disclosing the location of the pipeline were on adjacent property owned by another, Castor representatives drove by the markers before closing the purchase, and investigation of the weeds disclosed the markers on the property within 30 minutes.

In reviewing a no-evidence challenge like that here, we consider only the evidence and reasonable inferences therefrom in a light most favorable to the trial court's findings. *Lewelling v. Lewelling,* 796 S.W.2d 164, 166 (Tex. 1990). If there is more than a scintilla of evidence to support the finding, the challenge fails. *Id.* Under a factual sufficiency review, we consider and weigh all of the evidence and set the finding aside only if the evidence supporting it is so weak that it is manifestly wrong or clearly unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986).

According to the record, the property in question was bordered on the south by a highway and a railroad right-of-way which abut each other. Pipeline vents or markers were positioned on each side of the highway and each side of the railroad right-of-way. The vent on the north side of the railroad easement also marked the south side of the property in question; yet, it was unclear from the record whether that vent was actually located on the

3

railroad easement or on the property in question. There was also a vent on the north side of the property. The four vents were aligned in a north-south direction.

Additionally, 1) Castor's president, Lee Browning, was not told of the easement prior to purchase, 2) in April 1999, prior to Castor's purchase of the property in June, there were weeds around the area where the pipeline lay, 3) prior to purchase of the property, Browning attempted to inspect the entire property including the area where the north vent was located but was prevented from doing so by weeds, 4) he noticed the north vent sometime after the property was purchased when he was hunting pheasants, 5) after the dispute arose, it took Browning 30 minutes to find the south vent due to weeds, 6) Browning had seen the vents on the south side of the railroad tracks and on the highway prior to purchase as well as markers east of the highway right-of-way, 7) the vents or markers themselves did not indicate which way the pipeline ran, 8) the vents or markers on the property still had signs after the dispute arose which showed the pipeline belonged to Westar Transmission Company, a predecessor to Oneok, 9) Oneok had not maintained the property surrounding the markers or vents, though it was required to do so, 10) an environmental study of the property commissioned by Castor failed to reveal the easement or pipeline, 11) the title acquired by Castor failed to mention the easement in question, though it disclosed others, and 12) the first time Browning was actually able to see if the vent markers adjacent to or on the north and south sides of the property actually aligned was when he was raised 16 or 17 feet up in a forklift after the dispute arose. There was also testimony that if maintenance had been performed on the vents, they should have had Oneok stickers on them as opposed to Westar Transmission stickers. Given this and that the vents or markers on the property were hidden in weeds that Oneok failed to remove

4

and that the alignment of the vents (thereby illustrating their direction) could not be determined by someone standing on the ground, more than a scintilla of evidence appeared of record supporting the conclusion that Oneok's possession of the easement was not open, visible, exclusive, or unequivocal and that Castor lacked prior notice of the easement. Thus, there exists legally sufficient evidence supporting the finding that Castor was a bona fide purchaser for value without notice of the interest.

In assessing its factual sufficiency attack, we note that 1) Browning's testimony was inconsistent regarding when he first became aware of the north pipeline vent, 2) an employee of Oneok testified that every spring and summer, Oneok sprayed for weeds around its markers, 3) a witness stated that the markers were examined once a year to make sure they were in good condition, 4) a witness stated that if one were to align two signs or markers, he would have an indication of the direction the pipeline ran, and 5) the three vents along the highway and railroad right-of-way were not only visible in photographs taken after 1999 but also lined up with each other. In other words, Oneok relied upon the presence of the vent stands on the neighboring property as notice of the existence of its pipeline. A similar argument was asserted in *City of Corpus Christi v. Krause,* 584 S.W.2d 325 (Tex. Civ. App.– Corpus Christi 1979, no writ).

In *Krause*, the city cited the existence of vent stand pipes placed over the location of the pipeline as evidence of notice. However, the court found no such notice since the markers were not actually on Krause's property, contained no directional lines indicating which way the pipeline traveled, did not necessarily designate the direction of the pipeline, and were not always visible from the highway due to weeds and grass. *Id.* at 329. Here,

5

we too have evidence of visible markers off of the property and evidence of weeds hiding the vents on the property. And, while it may be that aligning the vents off of the property may have indicated a direction of the pipe, they did not indicate that the pipe only ran straight or that it failed to turn before it reached the property. And, that the pipeline could have turned and run at an angle to the property is established in an exhibit depicting that it did just that after crossing the property. Moreover, this same exhibit showed that there were no vents visible (*i.e.* unhidden by weeds) on the lands abutting the north side of the property with which to align the vents on the lands abutting the south side of the property. So, in light of the holding in *Krause* and the evidence before the trial court at bar, we cannot say that the findings of the trial court were so against the great weight and preponderance of the evidence as to be clearly wrong or manifestly unjust.[2]

This lack of notice also vitiated Oneok's claims of easement by prescription or estoppel. *See Rhodes v. Cahill,* 802 S.W.2d 643, 645 (Tex. 1990) (stating that adverse possession or acquisition by prescription must involve possession that is visible, notorious, distinct, and hostile); *Vinson v. Brown,* 80 S.W.3d 221, 229 (Tex. App.–Austin 2002, no pet.) (stating that no easement by estoppel can be imposed against a subsequent purchaser for value who has no actual or constructive notice of the easement claimed).

---

[2] Oneok also relies on *Lake Meredith Development Co. v. City of Fritch,* 564 S.W.2d 427 (Tex. Civ. App.–Amarillo 1978, no writ) to support its proposition that the existence of the vent stands was sufficient to give constructive notice. In *Fritch*, the existence of sewer and water lines was noted by three above ground manholes and depressed ground along the pipelines visible from the road. *Id.* at 431. There was also evidence that the pipelines were shown on the city maps which were available for inspection by the public. *Id.* at 430-31. No such public resource was available at bar. Nor was there evidence that any vent stands located on the subject property were visible from the road prior to the sale. Thus, *Fritch* is distinguishable.

6

Accordingly, we overrule all of Oneok's issues and affirm the judgment of the trial court.


Per Curiam