Opinion of May 29, 2003 Withdrawn; Affirmed in Part and Reversed and
Remanded in Part; Corrected Memorandum Opinion filed June









Opinion of May 29, 2003 Withdrawn; Affirmed in Part and Reversed and Remanded in
Part; Corrected Memorandum Opinion filed June 12, 2003.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-00-01300-CV

NO. 14-00-01307-CV

____________

 

CHRISTOPHER JOSEPH
MCCLOSKEY, Appellant

 

V.

 

ANNE MIRIAM
MCCLOSKEY, Appellee

 



 

On Appeal from the
387th District Court

Fort Bend County, Texas

Trial Court Cause
No. 106,445

 



 

C O R R E C T E D    M E
M O R A N D U M    O P I N I O N

Our Opinion of May 29, 2003, is withdrawn
due to a typographical error, and the following is substituted.  Appellant Christopher Joseph McCloskey
appeals from a final decree of divorce signed on September 21, 2000, as
modified.[1]  For the reasons stated below, we affirm in
part, reverse in part, and remand.








PROCEDURAL BACKGROUND

Anne Miriam McCloskey began divorce
proceedings against Chris McCloskey in late 1998.  Chris counter-petitioned for divorce.  A jury heard the issues relating to
conservator-ship and primary residence of their two children.  The trial court heard the remaining issues
relating to the children, including child support, rights and powers of a
parent, and visitation, as well as the characterization and division of property
and attorney=s
fees.  Although Chris was represented by
counsel at the jury trial, he discharged his counsel and represented himself
pro se at the bench trial.  The trial
court signed a divorce decree on September 21, 2000.  Chris filed a notice of appeal from that judgment.

After the entry of the original decree of
divorce, the trial court issued several orders, including a turnover order and
Qualified Domestic Relations Orders.  The
original decree of divorce was also modified several times, and a corrected
final judgment was signed on January 12, 2001. 
Chris filed an amended notice of appeal in response to the subsequent
judgments.  The trial court filed
findings of fact and conclusions of law, and later filed amended and additional
findings of fact and conclusions of law at Chris=s
request.  The trial court also entered an
order assessing sanctions in the amount of $5,000.00 against Chris and an
attorney he retained after he discharged his earlier counsel.  

DISCUSSION

On appeal, Chris does not contest the
trial court=s
rulings relating to the children; he challenges only the trial court=s conduct of the bench
trial and an ancillary sanctions hearing. 
Chris raises twelve issues that may be grouped in the following
categories: (1) the exclusion of evidence; (2) the limitation on trial time;
(3) the assessment of sanctions; (4) the award of attorney=s fees to Anne; and (5)
the issuance of orders after the filing of an appeal.  We will address each in turn.  The parties are familiar with the facts, so
we will discuss only those necessary for our analysis.

I.          The Exclusion
of Evidence

In issues one through four, Chris
complains about the exclusion of certain account records and tracing charts
from the bench trial of the property issues. 
Specifically, he claims that the trial court committed the following
errors: (1) it placed the burden on him to prove that he timely produced the
documents when Anne=s
counsel objected to their admission on the grounds that they were not timely
produced; (2) alternatively, it found the documents were not timely produced
when the evidence was legally and factually insufficient to show that Chris
violated any discovery rules or alleged Rule 11 agreements; (3) it excluded the
documents even though (i) Anne=s
counsel did not come forward with evidence to support their assertions of
untimeliness, (ii) Anne=s
counsel previously admitted their receipt of account records in a motion to
strike the records as untimely, and (iii) Anne=s
counsel had waived such complaints as part of an agreement made in open court;
and (4) to the extent it relied on Anne=s
counsel=s unsworn assertions of
untimeliness, the trial court erred in precluding Chris from cross-examining
counsel or requiring counsel to produce documents to substantiate Anne=s counsel=s assertions.  

Before an appellate court will reverse a
judgment based on exclusion of evidence, the appellant must show that any error
in excluding the evidence caused the rendition of an improper judgment.  See Tex.
R. App. P. 44.1(a); City of Brownsville v. Alvarado, 897 S.W.2d
750, 753 (Tex. 1995) (holding that error in the exclusion of evidence is not
reversible unless appellant shows error probably caused the rendition of an
improper judgment).  Here, Chris has
wholly failed to demonstrate reversible error.








The general thrust of these issues is
that, by erroneously placing the burden of proof on Chris to show the documents
were timely produced, not only was evidence excluded, but also Chris=s trial presentation was
disrupted.  Because he was forced to
spend an inordinate amount of time on the admissibility of the documents, Chris
argues he was unable to put on relevant and admissible evidence in support of
his case on property division before the trial court determined his time had
expired.  Chris also claims evidence was
excluded because he was erroneously held to a March 7, 2000 discovery cutoff as
provided in a Rule 11 agreement instead of an agreement made in open court on
May 10, 2000, in which Chris agreed to waive his right to a jury trial in
exchange for Anne=s
agreement to waive any complaints about discovery produced through that date. 








Chris=s
argument focuses primarily on the trial court=s
error in placing the burden on him to overcome Anne=s representations that
certain documents were not timely produced. 
And, the record appears to show that Anne in fact may have waived her
objections to any late-filed discovery (at least as of May 10, 2000) in
exchange for Chris=s
agreement to a bench trial on part of the dispute.  However, we need not reach either of these
issues, because Chris does not identify what evidence he contends the trial
court ultimately excluded in error or what it would have shown.[2]  Moreover, he does not challenge the trial
court=s findings of fact
addressing the property division.  See
London v. London, 94 S.W.3d 139, 149 (Tex. App.CHouston [14th Dist.]
2002, no pet.) (holding that unchallenged findings of
fact are binding on the appellate court unless the contrary is established as a
matter of law or there is no evidence to support the trial court=s findings).  In his reply brief, Chris references
thirty-eight exhibits that he identified in the fact section of his original
brief, and states that the documents were “clearly relevant” to the separate
property characterization/tracing issues, but he does not explain how they were
relevant or what the documents or accompanying testimony would have shown; nor
does he provide any authority for any property character-ization theories he
might have raised.  Without this
information, we cannot know if the exclusion of the evidence caused the rendition
of an improper judgment.  As for the
testimony he was unable to adduce, the same problem existsCwe do not know what the
witness would have stated.  Thus, not
knowing what the excluded evidence might have shown, it is impossible for us to
conclude that the trial court=s
conduct of the trial caused the rendition of an improper judgment.  Moreover, being a neutral adjudicatory body,
we are not at liberty to advocate for one side or the other by making their
arguments for them.  See Lagrone v. John Robert Powers Schools, Inc., 841 S.W.2d
34, 37 (Tex. App.CDallas
1992, no writ).  There-fore, Chris has
waived the issues relating to the trial court=s
exclusion of evidence.  

Issues one through four are
overruled.  

II.        The Limitation
on Trial Time

In his fifth and sixth issues, Chris
complains that the trial court abused its discretion in imposing an arbitrary,
unilateral time limit upon Chris=s
presentation of his case and terminating the trial when the limit was
reached.  Much of Chris=s argument on these
issues reprises his arguments in the first four issues, because he contends
that the exclusion of relevant evidence relating to his property claims
constituted reversible error.  

The trial judge is responsible for the
general conduct and management of the trial. 
Hoggett v. Brown, 971 S.W.2d
472, 495 (Tex. App.CHouston [14th Dist.] 1997, pet. denied).  Every trial court has the “‘inherent power’”
to control the disposition of the cases on its docket “‘with economy of time
and effort for itself, for counsel, and for litigants.’”  Metzger v. Sebeck,
892 S.W.2d 20, 38 (Tex. App.CHouston [1st Dist.] 1994,
writ denied) (quoting Landis v. North Am. Co., 299 U.S. 248, 254
(1936)).  Together, the court=s inherent power and the
applicable rules of procedure and evidence accord judges broad, but not
unfettered, discretion in handling trials. 
Id.  The control given the
trial judge must be exercised reasonably, and a party must be given a fair
opportunity to present its case so the jury may ascertain the truth.  Sims v. Brackett, 885 S.W.2d 450, 455 (Tex. App.CCorpus Christi
1994, writ denied). 

Here, Chris complains that, although Anne
estimated that the presentation of her case would take one day, she was
permitted to exceed that amount of time, and it was not until she rested that
the trial court imposed a strict time limit of three hours on Chris.  Chris also complains that the trial court
wrongly included in his allotted trial time the time he spent attempting to address
Anne=s motions to suppress
Chris=s evidence.  He claims this error was particularly harmful
since he was acting pro se.  The
cumulative effect of these errors, Chris argues, was the rendition of an
improper judgment.

It is
apparent from our review of the record that Chris=s attempted presentation of his case on
the property issues
amply illustrates the perils of pro se representation.  Chris did not use his time to any advantage;
instead, he wasted considerable time on matters that did not advance his trial
presentation.  It is evident that at least some of Chris=s difficulties stemmed, not from any
time limits imposed by the trial court, but from his fundamental lack of under-standing
of procedural rules, the trial process, and basic legal principles.  Litigants choosing to appear pro se must
comply with the applicable procedural rules and are held to the same standards
that apply to licensed attorneys.  See
Sedillo v. Campbell, 5 S.W.3d 824, 829 (Tex. App.CHouston [14th Dist.] 1999, no pet.).  To treat Chris differently would accord him
an unfair advantage over litigants represented by counsel.  See Mansfield State Bank
v. Cohn, 573 S.W.2d 181, 184 (Tex.1978).

Nevertheless, we are troubled by the
three-hour limitation placed on Chris=s
presentation of his case on property issues, particularly when Anne was
permitted to exceed her allotted time and Chris was given no leeway
whatsoever.  When, as here, a trial court
undertakes to manage a trial by limiting the total amount of time available for
trial, due process concerns may be implicated. 
See Walton v. Canon, Short & Gaston, 23 S.W.3d 143, 155 (Tex. App.CEl Paso 2000, no pet.)
(McClure, J., concurring).

But, as in our discussion of issues one
through four, Chris has failed to show us what evidence was excluded,
and he does not demonstrate how it might have altered the outcome of the
trial.  Therefore, the issues have not
been adequately preserved for our review.

We overrule issues five and six.




III.       The Assessment
of Sanctions

In issues seven, eight, and nine, all of
which address post-judgment sanctions, Chris contends the trial court erred by
(1) imposing a $5,000.00 sanction against Chris and his attorney when there was
no legal basis for doing so, (2) imposing the sanction when there was no
evidence, or factually insufficient evidence, of any sanctionable conduct, and
(3) awarding attorney=s
fees to Anne as a sanction, when there was no evidence, or factually
insufficient evidence, that those fees were reasonably and necessarily incurred
as a result of any sanctionable conduct. 


The sanctions order was based on Chris=s request that the trial
court rule on a voluminous bill of exceptions he filed on November 8,
2000.  At the presentation of the bill,
however, it was determined that the bill Chris presented to the court differed
in certain respects from the bill served upon Anne, and so the matter was
passed.  Anne then filed a motion for
sanctions based on her numerous objections to the bill.  Among other things, she argued that much of
what was filed in the bill of exceptions (1) had been filed before, (2) was
actually entered in evidence, or (3) was prepared after the trial.  Additionally, Chris had retained counsel, Mr.
Moore, who filed a notice of appearance on October 18, 2000. Even though Moore
was retained and filed a notice of appearance before Chris filed the bill of
exceptions, Chris, rather than Moore, signed the bill of exceptions.  The trial court ordered sanctions imposed
against Chris and Moore, jointly and severally, in the sum of $5,000.00, plus
post-judgment interest.  








The trial court=s order included numerous
findings of specific grounds for the imposition of sanctions, including
violations of Texas Rules of Civil Procedure 13, 21b, and 57, Texas Civil
Practice and Remedies Code section 10.001(1), and Texas Rule of Appellate
Procedure 33.2.  Chris makes several
arguments as to why the sanctions are unjustified, but we find them
unmeritorious.  At a hearing on the
motion for sanctions, Moore admitted providing legal services to Chris in June
of 2000, and invoices admitted into evidence showed Moore billed Chris for
legal services from July through September of 2000.[3]  Moore did not dispute that he filed a notice
of appearance on October 18, 2000, and he did not disagree that Chris filed and
signed the bill of exceptions after Moore was designated as counsel of
record.  Moore denied that he assisted
Chris with the bill of exceptions, but admitted that an invoice entry for
September 13 referred to editing and preparing the bill of exceptions.  He explained that “the only thing that I did
on that document was to take Mr. McCloskey=s
acknowledgment and I did give him changes to the document” and “[t]here were
references in his copy that I did not think were proper for him to include in
his bill of exceptions.”  Anne=s counsel then testified
and was cross-examined regarding the reasonableness of his attorney=s fees.  He testified that the attorney=s fees incurred as a
result of the bill of exceptions totaled $11,450.00, as reflected on an invoice
admitted into evidence.  He also
testified that it was necessary for him and another lawyer to go through the
entire 1,685 pages of the bill of exceptions to compare them with other
documents and to attend hearings on the matter.

Chris has failed to show that the trial
court abused its discretion in awarding the sanctions, and we find the award,
totaling less than half of the fees sought by Anne, was appropriate and
supported by the record.  See TransAmerican Natural Gas Corp. v. Powell, 811 S.W.2d
913, 917 (Tex. 1991) (holding that a direct relationship must exist between the
offensive conduct and the sanction imposed, and the sanction must not be
excessive).

IV.       The Award of Attorney’s Fees to Anne








In issue ten, Chris raises two complaints
regarding the manner in which the trial court assessed and awarded trial and appellate
attorney fees against him.  First, Chris
complains that the trial court classified its award of $50,398.00 in attorney’s
fees as “child support and property division,” and argues that the trial court=s failure to segregate
the portion of the award representing attorney=s
fees incurred in the property division and the portion repre-senting fees
incurred in connection with child support provides Anne the benefit of the
enhanced remedies for enforcement of child support judgments for the entire
award.  We agree.  Because Anne is willing to rectify the matter
by classifying the fees as part of the division of property, we sustain this
part of Chris=s
issue and remand to the trial court to correct the judgment on this issue.

Chris=s
second complaint is that the trial court erred in failing to condition the
guardian ad litem=s
appellate attorney fee award on Chris=s
unsuccessful appeal of issues relating to the ad litem=s appointment.  However, Chris does not tell us where in the
record he brought this problem to the trial court=s
attention.  Consequently, the issue is
waived.  See Melendez, 998 S.W.2d at 280.

In addition, any error is moot because
custody and support issues were not appealed. 
Two orders in the judgment clarify that there are no appellate attorney=s fees for the ad
litem.  First, the judgment itself states
that the appellate fee award for Lester Van Slyke is not effective unless the
ad litem=s services are required
during the pendency of the appeal.  Chris
did not appeal any custody or support issues; he appealed only the property
division from the bench trial.  As a
result, this appeal did not require the services of the ad litem and the order
contained in the judgmentCthat
the ad litem will not receive appellate attorney=s
fees if his services are not requiredCcontrols.  There are no appellate attorney fees for the
ad litem.  In addition, the judgment orders
that the ad litem, having fulfilled all duties and obligations, is discharged
from all further duties and obligations as ad litem.

In short, the ad litem was not involved in
this appeal and, therefore, he incurred no appellate attorney=s fees and none will be
assessed against Chris.  We therefore
overrule this portion of issue ten.




V.        The Issuance of
Orders After Appeal








In his last two issues, Chris contends
that the trial court erred by (1) issuing orders clarifying and aiding
enforcement of its judgment when its judgment was the subject of a notice of
appeal, and (2) issuing orders that divested Chris of his separate
property.  Chris=s complaints relate to
two financial accounts, a Du Pont account and a Vanguard account, which were
the subject of a Turnover Order, and a Qualified Domestic Relations Order
(QDRO) directed to the Du Pont account.[4]  

Chris relies on section 9.007(c) of the
Texas Family Code, which provides that “[t]he power of the court to render
further orders to assist in the implementation of or to clarify the property
division is abated while an appellate proceeding is pending.”  Tex. Fam. Code Ann. ' 9.007(c).  Chris also cites this Court’s opinion in English
v. English, 44 S.W.3d 102, 106 (Tex. App.CHouston [14th Dist.]
2001, no pet.), in which we discussed section 9.007(c) and noted that, after an
initial decree containing a property division, the trial court is legislatively
restrained from rendering further orders to assist in the implementation or
clarification of the property division pending appeal.  However, Texas Family Code section 9.101
exempts QDROs from the purview of section 9.007:

(a)  Notwithstanding any
other provision of this chapter, the court that rendered a final decree of
divorce or annulment or another final order dividing property under this title
retains continuing, exclusive jurisdiction to render an enforceable qualified
domestic relations order or similar order ….

Tex. Fam. Code Ann. ' 9.101(a).  Moreover, English is distinguishable
because it did not involve QDROs. 
Therefore, we find that the trial court did not lack the authority to
enter the QDRO directed to the Du Pont account. 
As for the turnover order, it was filed approximately 90 minutes before
the notice of appeal was filed, so we need not reach the question whether it
was rendered in violation of section 9.007(c). 

Finally, we find that Chris has
inadequately briefed the issue of the divestiture of separate property and so
has waived the issue.  See Tex. R. App. P. 38.1(h); Rendleman v. Clarke, 909 S.W.2d 56, 59 (Tex. App.CHouston
[14th Dist.] 1995, writ dism’d as moot).              Therefore,
we overrule issues eleven and twelve.








                                                                 CONCLUSION

In summary, the judgment of the trial
court is affirmed in part, reversed in part, and remanded for further
proceedings consistent with this opinion. 
Specifically, we affirm all portions of the judgment, except for that
part of the judgment which assessed all attorney=s
feesCwhether related to
property division or child custodyCas
child support and property division, and failed to segregate the fees related
to the property division from the child custody issues.  That part of the judgment is reversed and
remanded for further proceedings in accordance with this opinion.

 

 

/s/        Wanda McKee Fowler

Justice

 

 

 

 

 

Judgment
rendered and Corrected Memorandum Opinion filed June 12, 2003.

Panel
consists of Chief Justice Brister and Justices Hudson and Fowler.

 

 











[1]  Appellant’s
appeal in this cause, No. 14-00-01300-CV, was consolidated with an
interlocutory appeal in No. 14-00-01307-CV, which appellant states in his brief
he has now abandoned.  





[2]  The record in
this case was voluminous, consisting of thirty-one volumes of clerk’s record
plus one supplemental volume, thirty-four volumes of reporter’s record
(including eight volumes of exhibits), and a supplemental reporter’s
record.  This Court has no duty to search
a voluminous recordCwithout guidance from the appellantCto determine whether an assertion of reversible error
is valid.  See
Melendez v. Exxon Corp., 998 S.W.2d 266, 280
(Tex. App.CHouston
[14th Dist.] 1999, no writ). 





[3]  Chris had
discharged his prior counsel on June 14, 2000.





[4]  Chris contends
that both the Du Pont and the Vanguard accounts are subject to QDROs, but the
record contains no QDRO addressing the Vanguard account.