# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00780-CV

**Elizabeth H. Baize and Bobby Craig Baize, Appellants**

**v.**

**Scott & White Clinic; Scott & White Memorial Hospital; and Scott, Sherwood and Brindley Foundation, Appellees**

## FROM THE DISTRICT COURT OF BELL COUNTY, 169TH JUDICIAL DISTRICT NO. 197,916-C, HONORABLE GORDON G. ADAMS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

In this medical malpractice suit, appellants Elizabeth H. Baize and Bobby Craig Baize contend that the trial court erred by granting summary judgment in favor of appellees Scott & White Clinic, Scott & White Memorial Hospital, and Scott, Sherwood and Brindley Foundation (collectively referred to as "Scott & White"). The basis for Scott & White's summary judgment motion was the Baizes' failure to designate testifying experts. For the reasons set forth below, we affirm the trial court's judgment in favor of Scott & White.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 15, 2003, the Baizes filed a lawsuit against Scott & White for medical negligence, alleging that Elizabeth Baize suffered severe and permanent nerve damage to her right

arm and wrist, among other injuries, as a result of undergoing surgery on her jaw for sleep apnea at Scott & White Memorial Hospital.

The Baizes initially were represented by attorneys Michael Archuleta and George Hanko of the Archuleta Law Firm. On December 2, 2004, the two attorneys filed a motion to withdraw as counsel, and on January 7, 2005, the trial court entered an order allowing them to withdraw.[1] The portions of the motion relevant to this appeal state that:

> The discovery period has not ended and no scheduling order has been entered. This case is not currently set for any upcoming hearings or trial.
>
> . . . .
>
> There is no pending trial or hearing settings [sic], however there is a pending deadline for Plaintiffs to respond to Defendants' discovery requests, which are due January 10, 2005.

In conjunction with the withdrawal, Archuleta entered into a rule 11 agreement with Scott & White on behalf of the Baizes to extend all deadlines for 45 days. In a letter to the Baizes, Archuleta informed the Baizes of the extension, that he had recalculated the deadlines for them, and that they could disregard deadlines cited in previous correspondence. The letter listed deadlines for (1) filing a cost bond in lieu of an expert report, (2) responses and objections to written discovery, and (3) filing an expert report. Neither the motion to withdraw nor the letter to the Baizes disclosed the deadline for designating experts.

---

[1] The motion did not disclose the reason for withdrawal, but stated that "circumstances have developed which would hinder . . . continued effective prosecution of this claim" and that the Baizes had been notified of the specific circumstances.

The Baizes proceeded *pro se* for approximately seven months. However, Scott & White's attorney testified at a hearing that during that period the Baizes were informally represented by a family friend who was an attorney and who was attempting to negotiate a settlement on their behalf. She testified that the family friend asked her not to contact Elizabeth Baize directly because he preferred to take any discussion of settlement to her himself. Scott & White's attorney also testified that she informed the family friend of the upcoming expert designation deadline and that she would file a motion for summary judgment if the designation was not made.

While *pro se*, the Baizes filed their expert reports on April 19, 2005,[2] the deadline communicated to them by Archuleta.[3] The Baizes, however, failed to designate experts by the applicable June 13, 2005 deadline. On July 5, 2005, Scott & White filed a motion for summary judgment, asserting that without expert testimony the Baizes had no evidence of the appropriate standard of care, breach of that standard of care, or a causal connection between Scott & White's conduct and Elizabeth Baize's injuries. Alternatively, Scott & White argued that there was no genuine issue as to any material fact, entitling it to judgment as a matter of law.

---

[2] Medical malpractice cases filed prior to September 1, 2003, as was the instant case, are governed by former article 4590i. *See* Act of May 30, 1977, 65th Leg., R.S., ch. 817, 1977 Tex. Gen. Laws 2039 (formerly codified at Tex. Rev. Civ. Stat. Ann. art. 4590i, §§ 1.01-16.02), *repealed by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 864, 884. Article 4590i, section 13.01(a)(3), mandated that claimants in health care liability cases file an expert report within 90 days of filing the claim. Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 1, sec. 13.01(a)(3), 1995 Tex. Gen. Laws 985, 985. Upon the repeal of article 4590i, the relevant sections governing expert reports were recodified with amendments in chapter 74 of the civil practice and remedies code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351 (West Supp. 2006).

[3] Scott & White argued that, as correctly calculated, the expert report deadline was eight days earlier and that the Baizes' expert reports were untimely filed. They filed a motion to dismiss on this basis, but the trial court did not rule on the motion.

3

The Baizes retained new counsel and, on August 9, 2005, filed a motion for a level 3 discovery control plan scheduling order. *See* Tex. R. Civ. P. 190.4. Three days later, they filed a response to Scott & White's motion for summary judgment and a motion for leave to designate experts. A hearing on the motions was set for August 19, and the parties executed the following rule 11 agreement drafted by the Baizes' attorney:

> It is my understanding that you have agreed that it will not be necessary for us to file an expert affidavit in response to the Motion for Summary Judgment, but rather, we will limit it to the issue regarding Plaintiffs' expert designation deadline under a Level II case. In other words, Plaintiffs will agree that if the Court determines that our expert designation deadline has passed, that summary judgment is proper. Defendants agree that that [sic] the expert designation deadline will be the only basis for the Motion for Summary Judgment presented to the Court at the hearing on August 19th. Obviously, Defendants reserve the right to re-urge any other aspects of this or any other Motion for Summary Judgment in accordance with the Court's Scheduling Order.

At the hearing, counsel for Scott & White argued that a level 3 scheduling order was not appropriate and that the deadline for designating experts under a level 2 case had passed, therefore entitling Scott & White to summary judgment. The Baizes' counsel stated that "[i]f the Court determines that we are not entitled to have experts, that [we] are not going to get a new deadline, then I agree that under that scenario the summary judgment is proper. But what we are asking is for a new deadline under a Level 3." On August 29, 2005, the trial court granted Scott & White's motion for summary judgment. The Baizes filed motions to reconsider and for new trial, which were overruled on November 10, 2005.

4

## ANALYSIS

In four issues on appeal, the Baizes argue that (1) the trial court erred in granting summary judgment based on an expert witness designation deadline that had not been communicated to them pursuant to rule 10 of the Texas Rules of Civil Procedure; (2) the trial court erred in granting summary judgment to the extent it based its decision on an ambiguous rule 11 agreement; (3) the trial court abused its discretion by failing to enter a level 3 discovery control plan scheduling order; and (4) the trial court abused its discretion in failing to allow them to designate experts because good cause existed for the failure to designate and Scott & White lacked unfair surprise or prejudice.

### *Standard of review*

We review summary judgments *de novo*. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). Scott & White moved for summary judgment on both no-evidence and rule 166a(c) summary judgment grounds; however, because we conclude that Scott & White satisfied the burden for a no-evidence summary judgment, we discuss only the standard of review for that motion. A party seeking a no-evidence summary judgment must assert that no evidence exists as to one or more of the essential elements of the nonmovant's claims on which it would have the burden of proof at trial. *Holmstrom v. Lee*, 26 S.W.3d 526, 530 (Tex. App.—Austin 2000, no pet.). Once the movant specifies the elements on which there is no evidence, the burden shifts to the nonmovant to raise a genuine issue of material fact on the challenged elements, and the court must grant the motion if the nonmovant fails to do so. Tex. R. Civ. P. 166a(i).

*Rule 10*

In their first issue, the Baizes argue that the trial court erred in granting a summary judgment based on an expert witness designation deadline that had not been communicated to them pursuant to rule 10 of the Texas Rules of Civil Procedure. *See* Tex. R. Civ. P. 10. The rule permits withdrawal "only upon written motion for good cause shown." *Id.* If another attorney will not be substituted, the motion must state "that a copy of the motion has been delivered to the party; that the party has been notified in writing of his right to object to the motion; whether the party consents to the motion; the party's last known address and *all pending settings and deadlines*." *Id.* (emphasis added). A trial court abuses its discretion when it grants a motion to withdraw that does not comply with the mandatory requirements of rule 10. *Gillie v. Boulas*, 65 S.W.3d 219, 221 (Tex. App.—Dallas 2001, pet. denied); *Walton v. Canon, Short & Gaston, P.C.*, 23 S.W.3d 143, 148 (Tex. App.—El Paso 2000, no pet.); *Williams v. Bank One, Tex., N.A.*, 15 S.W.3d 110, 114 (Tex. App.—Waco 1999, no pet.); *Moss v. Malone*, 880 S.W.2d 45, 51 (Tex. App.—Tyler 1994, writ denied) (op. on reh'g). Such error may be harmless if the court allows the party time to secure new counsel and time for the new counsel to investigate the case and prepare for trial. *Gillie*, 65 S.W.3d at 221; *Walton*, 23 S.W.3d at 148.

The motion to withdraw in this case did not include the expert designation deadline. The Baizes argue that they were harmed because the uncommunicated deadline was the basis for the summary judgment. The focus of the harm analysis, however, is whether the party has sufficient time to secure new counsel and for that new counsel to prepare. The Baizes refer this Court to *Villegas v. Carter*, 711 S.W.2d 624 (Tex. 1986), and *Moss*, 880 S.W.2d at 50. In *Villegas*, the trial

6

court permitted counsel to withdraw two days before trial, and counsel refused to turn over Villegas's files. 711 S.W.2d at 625-26. The trial court denied Villegas's request for a continuance, but the supreme court held that the denial was an abuse of discretion. *Id.* at 626. The supreme court stated that "[t]he trial court should either have denied the attorney's motion to withdraw or granted the party's motion for continuance." *Id.* at 627.

In *Moss*, even though the withdrawal motion failed to comply with any of the requirements of rule 10, the trial court permitted counsel to withdraw and set the case for a bench trial seventeen days later. 880 S.W.2d at 46. At the setting, Moss stated that she had located an attorney who would take her case, but that he needed more time to prepare. *Id.* at 47. The trial court rescheduled the trial for twenty-eight days later, but when Moss appeared at this new setting she stated that her new attorney could not attend on that date and she requested an additional thirty days. *Id.* at 48. The court denied her request and dismissed the case. *Id.* at 48-49. The appellate court held that the trial court abused its discretion in permitting counsel to withdraw without giving Moss "meaningful time . . . to find new counsel and prepare for trial." *Id.* at 51. Even though Moss had a total of 57 days, the court observed that she was forced to find counsel within two weeks, obtain a continuance, and investigate the case and prepare for trial in 28 days; if the court had given her 57 straight days, "then the equities would be significantly altered." *Id.*

Both *Villegas* and *Moss* involved withdrawals of counsel shortly before trial and denials of motions for continuance; thus, there was insufficient time to find new counsel and for that counsel to prepare. In this case, however, all deadlines were extended for 45 days, and the extension pushed the expert designation deadline more than six months into the future. Other appellate courts

7

have found similar time periods sufficient to alleviate any harm caused by a defective motion to withdraw. *See, e.g.*, *Walton*, 23 S.W.3d at 148-49 (50 days); *Williams*, 15 S.W.3d at 114 (42 days); *Holt v. D'Hanis State Bank*, 993 S.W.2d 237, 240 (Tex. App.—San Antonio 1999, no pet.) (37 days). The Baizes did not immediately retain new counsel; instead, there was testimony that they were working informally with a family friend who was an attorney in an effort to reach a settlement.

*Pro se* litigants are not exempt from the rules of procedure. *Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184-85 (Tex. 1978). The rules of civil procedure provide the applicable deadlines for discovery and designation of experts unless those deadlines are changed by agreement of the parties or order of the court. *See* Tex. R. Civ. P. 190, 190 cmt. 1, 191.1, 195.2. In an affidavit attached to the Baizes' response to Scott & White's motion for summary judgment, Elizabeth Baize averred that "[w]e believed the Court would ultimately set forth specific deadlines for depositions, discovery, and expert dates. We had no idea that we had any specific deadline for designation of experts other than the April 19th date and thought the Court would issue an order regarding future dates." However, the motion to withdraw filed by the Baizes' attorneys stated that "[t]he discovery period has not ended and no scheduling order has been entered," and at no time while proceeding *pro se* did the Baizes request that the court enter a scheduling order. In addition, "Texas courts have long recognized the necessity of expert testimony in medical-malpractice cases." *American Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 876 (Tex. 2001). The use of experts at trial requires designation. *See* Tex. R. Civ. P. 195.2 (schedule for designating experts).

8

The Baizes also failed to meet a deadline of which they were aware and which might have alerted them to the need to designate experts. The letter sent to the Baizes by their former attorney informed them of the deadline for their answers to discovery, but they did not file any responses while proceeding *pro se*. Before their attorney withdrew, the Baizes had filed a response to requests for disclosures, and in answer to a request for information on testifying experts, the Baizes stated "Plaintiffs will supplement." The Baizes did not supplement. In addition, the Baizes did not respond to requests for production or interrogatories. While neither of these discovery items inquired about testifying experts, there were interrogatories asking about consulting experts and treating doctors.

While the subject of the uncommunicated deadline—expert designation—was the basis for the summary judgment motion in this case, the trial court allowed the Baizes sufficient time to secure new counsel and for the new counsel to investigate the case and prepare for trial. We overrule the Baizes' first issue.

### The rule 11 agreement

In their second issue, the Baizes contend that the trial court erred in granting summary judgment to the extent it based its decision on an ambiguous rule 11 agreement. *See* Tex. R. Civ. P. 11. To be enforceable, a written agreement relating to a lawsuit must be in writing, signed and filed with the papers as part of the record. *Id.* The law of contracts applies to rule 11 agreements. *Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex. 1995) (analogizing rule 11 "in writing" requirement to statute of frauds writing requirement); *Ronin v. Lerner*, 7 S.W.3d 883, 886 (Tex. App.—Houston [1st Dist.] 1999, no pet.). Rule 11 requires a "written memorandum which

9

is complete within itself in every material detail, and which contains all of the essential elements of the agreement," so that the agreement "can be ascertained from the writings without resorting to oral testimony." *Padilla*, 907 S.W.2d at 460.

In construing a contract, the primary concern of the court is to ascertain and give effect to the true intention of the parties as they expressed that intent in the instrument. *Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 423 (Tex. 2000). Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the parties entered the contract. *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983). If the contract can be given a certain or definite legal meaning, then it is not ambiguous. *National Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). If, however, the language of a contract is subject to two or more reasonable interpretations, it is ambiguous. *Id.* An ambiguity does not arise simply because the parties advance different interpretations of the contract's language. *Weslaco Fed'n of Teachers v. Texas Educ. Agency*, 27 S.W.3d 258, 264 (Tex. App.—Austin 2000, no pet.)

The Baizes construed the rule 11 agreement as permitting them to avoid summary judgment so long as the trial court allowed them to designate experts by entering a level 3 discovery control plan scheduling order or otherwise granting leave. They did not dispute that the expert designation deadline under a level 2 case had passed. The agreement states that the parties will "limit [the motion for summary judgment] to the issue regarding Plaintiffs' expert designation deadline under a Level II case. In other words, Plaintiffs will agree that if the Court determines that our expert designation deadline has passed, that summary judgment is proper." The agreement also

states that "Defendants reserve the right to re-urge any other aspects of this or any other Motion for Summary Judgment in accordance with the Court's Scheduling Order." Because both parties agreed the level 2 deadline had passed and because no scheduling order had been entered in the case, inclusion of the reference to "the Court's Scheduling Order" is inconsistent with an intent to limit the summary judgment hearing merely to the calculation of the level 2 deadline, rather than to whether the expired level 2 deadline should apply instead of a new deadline. When read as a whole in light of the circumstances present when the parties entered the agreement, the statement that the Baizes "will agree that if the Court determines that our expert designation deadline has passed, that summary judgment is proper" did not limit the hearing on the summary judgment motion only to whether the level 2 deadline had passed. Thus, we conclude that the agreement is unambiguous.

The Baizes argue, however, that Scott & White misconstrued the agreement as requiring summary judgment if the designation deadline under level 2 had passed. We disagree. At the hearing on the motion for summary judgment, Scott & White first argued that entering a level 3 scheduling order was inappropriate, and then argued that, because the expert designation deadline had passed under level 2, the court should grant summary judgment. In addition, at the hearing on the motion to reconsider during direct examination of Scott & White's counsel by the Baizes' counsel, the following exchange occurred:

> Q [Baizes' counsel]: Were you under the impression that I was agreeing that if the deadlines had passed, that summary judgment would be proper when you got off the phone with me?
>
> A [Scott & White's counsel]: Yes.

11

Q: Okay.  And you knew in your mind that if that's the case, then there would be no basis for the Court to do anything other than to grant the summary judgment.

A: That's correct.

Q: Certainly, you would agree with me that the response I filed to the summary judgment is certainly inconsistent with that.  Fair statement?

A: I don't know that I would say it's inconsistent, since we didn't discuss in particular Level 2 versus Level 3.

The position taken by Scott & White is consistent with the agreement.  Because the agreement was not ambiguous, the Baizes' argument is without merit, and we overrule issue two.

### *Good cause and lack of unfair surprise or unfair prejudice*

In their fourth issue, the Baizes argue that the trial court abused its discretion in failing to allow them to designate experts because good cause existed for the failure to designate and Scott & White was not unfairly surprised or prejudiced.  If a party fails to timely designate an expert witness, then testimony from that expert will be excluded unless the trial court determines that the party seeking to introduce the evidence established either (1) there was good cause for the failure, or (2) it would not unfairly surprise or unfairly prejudice the other parties to admit the evidence. Tex. R. Civ. P. 193.6(a)-(b); *Ersek v. Davis & Davis, P.C.*, 69 S.W.3d 268, 271 (Tex. App.—Austin 2002, pet. denied).

We apply an abuse of discretion standard to review a court's decision of whether good cause or lack of unfair surprise or prejudice existed for a late designation of experts. *Ersek*, 69 S.W.3d at 271-72.  A court abuses its discretion if it acts without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).  When

12

reviewing matters committed to the trial court's discretion, a court of appeals may not substitute its own judgment for that of the trial court. *Walker v. Gutierrez*, 111 S.W.3d 56, 63 (Tex. 2003). The mere fact that a trial court may decide a matter within its discretionary authority in a different manner than an appellate court in a similar circumstance does not demonstrate an abuse of discretion has occurred. *Downer*, 701 S.W.2d at 242.

The Baizes contend that good cause existed because they were not notified of the expert designation deadline. However, as we have discussed, the Baizes did not retain counsel for seven months. During that time they did not comply with a discovery deadline of which they were aware. Also, even though the motion to withdraw stated that no scheduling order had been entered, the Baizes did not request one. Furthermore, because this case is one requiring expert testimony, it is clear that designation of testifying experts was necessary. *See* Tex. R. Civ. P. 195.2. Consequently, we cannot say that the trial court acted without reference to any guiding rules or principles in failing to find good cause.

The Baizes also argue that Scott & White will not be unfairly surprised or prejudiced by allowing the Baizes to now designate experts because there is no trial setting, and Scott & White will have time to prepare for trial. A primary purpose of the discovery rules is to prevent trial by ambush. *Alvarado v. Farah Mfg. Co., Inc.*, 830 S.W.2d 911, 914 (Tex. 1992). In preparing for trial, a party ought to be "assured that a witness will not be called because opposing counsel has not identified the witness in response to a proper [discovery request]." *Id.* at 915. However, it is not necessary that a pending trial date exists before a court may make a finding of unfair surprise and

13

prejudice; a party's ability to adequately prepare for trial can be affected even before a trial date is set. *Ersek*, 69 S.W.3d at 271-72. Even if the party knows the substance of the witness's opinions, a non-designated witness should not be permitted to testify because the party is not on notice that the witness will be called and, thus, cannot adequately prepare. *See Alvarado*, 830 S.W.2d at 915.

In the trial court, the Baizes requested that, at a minimum, the court grant them leave to designate the expert witnesses who prepared the expert reports as well as the treating physicians known to Scott & White because "none of these experts will result in any surprise." The Baizes argue that the expert witnesses they sought to designate had been identified and were known to Scott & White because their expert reports were filed with the court, and Scott & White therefore had "ample opportunity" to seek discovery and depositions from those experts to prepare for trial.

This argument overlooks that former article 4590i, section 13.01(k), which applies in this case, expressly prohibited the use of the required expert report as evidence for any purpose:

> (k)     Notwithstanding any other law, an expert report filed under this section:
>   (1)     is not admissible in evidence by a defendant;
>   (2)     shall not be used in a deposition, trial, or other proceeding;  and
>   (3)     shall not be referred to by a defendant during the course of the
>            action for any purpose.

Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 1, sec. 13.01(k), 1995 Tex. Gen. Laws 985, 986-87. While the statute does not prohibit the expert making the report from testifying as an expert witness at trial, *Trusty v. Strayhorn*, 87 S.W.3d 756, 761 n.3 (Tex. App.—Texarkana 2002, no pet.), a claimant is not required to use the same expert for both purposes. Merely filing an expert's report does not "designate" that expert as a testifying witness so as to put the opposing party on

14

notice to prepare a rebuttal. *Coleman v. Woolf*, 129 S.W.3d 744, 748 (Tex. App.—Fort Worth 2004, no pet.); *Patriacca v. Frost*, 98 S.W.3d 303, 304 (Tex. App.—Houston [1st Dist.] 2003, no pet.). Consequently, the fact that a non-designated expert's initial report has been filed does not prevent the opposing party from suffering unfair surprise or prejudice if that expert's testimony is then considered as evidence for summary judgment purposes. *Cunningham v. Columbia/St. David's Healthcare Sys., L.P.*, 185 S.W.3d 7, 14 (Tex. App.—Austin 2005, no pet.).

Because the Baizes failed to designate any experts, Scott & White was not on notice to prepare its case in response. We cannot say that the trial court abused its discretion in determining that the Baizes failed to establish that Scott & White would not be unfairly surprised or prejudiced by allowing a late designation of experts. We overrule issue four.

### Level 3 discovery control plan scheduling order

In their third issue, the Baizes argue that the trial court abused its discretion by failing to enter a level 3 discovery control plan scheduling order. A plaintiff must allege in the original petition whether discovery is intended to be conducted under level 1, 2, or 3. Tex. R. Civ. P. 190.1. The Baizes' petition stated an intention to conduct discovery under level 3. However, "[t]he initial pleading required by Rule 190.1 is merely to notify the court and other parties of the plaintiff's intention; it does not determine the applicable discovery level or bind the court or other parties." *Id.* 190 cmt. 1. Thus, despite pleading an intention to proceed under level 3, a case can be designated level 3 only by court order. *Id.* The rule addressing level 3 states that "[t]he court *must*, on a party's motion, . . . order that discovery be conducted in accordance with a discovery control plan tailored to the circumstances of the specific suit." *Id.* 190.4(a) (emphasis added). Even under a level 3

15

scheduling order, the level 2 deadlines continue to apply "unless specifically changed in the discovery control plan ordered by the court." *Id.* 190.4(b).

The Baizes did not file their motion for a scheduling order until after the expert designation deadline had passed and Scott & White had moved for summary judgment. Thus, the level 2 discovery control plan was in effect. The Baizes did not dispute that under level 2 the expert designation deadline had passed. Instead, they requested that the trial court enter a level 3 scheduling order with a new expert designation deadline.

A similar situation arose in *Branum v. Northwest Tex. Healthcare Sys., Inc.*, 134 S.W.3d 340 (Tex. App.—Amarillo 2003, pet. denied). There, a plaintiff in a medical negligence case timely served expert reports but failed to designate experts. *Id.* at 341. The defendants filed a no-evidence motion for summary judgment, and in response, the plaintiff filed a motion to enter a level 3 discovery control plan. *Id.* The trial court granted the motion for summary judgment and did not enter a level 3 scheduling order.[4] *Id.* at 342. On appeal, the court observed that the plaintiff did not contend that she did not have an adequate time for discovery; rather, she argued that, because she filed a motion for a level 3 order, she was entitled to "adequate time for discovery" under level 3. *Id.* at 343. The court stated that "[e]ven if the trial court was required to convert discovery to

---

[4] Unlike the Baizes, Branum initially pleaded that she intended to conduct discovery under level 2. *Branum v. Northwest Tex. Healthcare Sys., Inc.*, 134 S.W.3d 340, 341 (Tex. App.—Amarillo 2003, pet. denied). However, this distinction does not affect our analysis because the initial pleading "does not determine the applicable discovery level or bind the court or other parties." *See* Tex. R. Civ. P. 190 cmt. 1. Because level 2 is the default discovery control plan and no level 3 scheduling order was entered, both the Baizes and Branum proceeded under level 2.

16

level 3, a question we need not decide, . . . whether an 'adequate time for discovery' has been provided is case specific," and the court affirmed the trial court's judgment. *Id.*

The *Branum* court did not address whether a level 3 order was required—the issue the Baizes have raised—because it determined that summary judgment was proper; it did, however, allow the trial court to grant a summary judgment without first entering a level 3 order. *Id.*; *see also Hair v. Church & Dwight Co., Inc.*, No. 05-03-01153-CV, 2004 Tex. App. LEXIS 6451, at *2 (Tex. App.—Dallas July 20, 2004, no pet.) (mem. op.) ("complaint that the trial court did not order level three discovery is not a proper attack on a no-evidence motion for summary judgment"). Moreover, while the rules of civil procedure state that the court *must* enter a level 3 scheduling order on a party's motion, they do not require that the order provide deadlines different from those under a level 2 case. Tex. R. Civ. P. 190.4. That decision is left to the trial court's discretion. *See id.* ("The discovery control plan ordered by the court . . . *may* change any limitation on the time for . . . discovery set forth in these rules." (Emphasis added.)). Because the rules give the trial court discretion under a level 3 order to determine what deadlines to apply and because we have already determined that the trial court did not abuse its discretion in failing to grant the Baizes leave to designate experts, we conclude that the trial court did not abuse its discretion in granting Scott & White's motion for summary judgment without first entering a level 3 scheduling order. We overrule the Baizes' third issue.

17

*Appropriateness of summary judgment*

In their motion for summary judgment, Scott & White contended that without expert testimony the Baizes had no evidence of the appropriate standard of care, breach of that standard of care, or a causal connection between Scott & White's conduct and Elizabeth Baize's injuries. *See Cunningham*, 185 S.W.3d at 13 (non-designated expert's affidavit cannot be considered as evidence for summary judgment absent showing of good cause or lack of unfair surprise or prejudice).[5] Having determined that the trial court did not err in denying the Baizes' request for leave to designate experts, the Baizes failed to present summary judgment evidence sufficient to raise an issue of material fact as to the challenged elements of their claim. *See* Tex. R. Civ. P. 166a(i). The trial court did not err in granting Scott & White's motion for summary judgment.

## CONCLUSION

Having overruled the Baizes' four issues, we affirm the trial court's judgment.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Pemberton

Affirmed

Filed: January 22, 2007

_____

[5] The parties' rule 11 agreement provided that the summary judgment hearing would be limited to the expert designation issue and that expert affidavits would not be necessary. Because the trial court did not permit the Baizes to make a late designation, they did not have any experts whose affidavits could have been considered as summary judgment proof.

18